UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| STEVE AND ALLISON GARRY,<br><br>Plaintiffs,<br><br>vs.<br><br>HOMELAND CENTRAL INSURANCE COMPANY formerly known as HAWKEYE SECURITY INSURANCE COMPANY,<br><br>Defendant. | Civ. 03-4019<br><br>**AFFIDAVIT OF NEIL CARLSON IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF NEIL CARLSON** |

STATE OF MINNESOTA )
:SS
COUNTY OF RAMSEY )

Neil Carlson, being first duly sworn upon his oath, deposes and states:

1. I am a Certified Industrial Hygienist with more than 15 years of experience conducting indoor air investigations related to mold. I have taught courses for the University of Minnesota's Center for Public Health Outreach on mold identification, mold investigation and mold remediation. I have taken graduate course work in mycology and environmental microbiology. I have taken additional courses in fungal identification. I have been involved in more than 2,000 building fungal investigations as a consultant. Please refer to my resume for further qualifications.

2. I am providing this affidavit in response to the Defendant's motion to exclude my testimony in the *Garry v. Homeland Central Insurance* litigation. My work in this case as well as my findings and conclusions in this affidavit and in my original report are based upon my own extensive education, research and experience in this area

using generally accepted scientific principles and methodologies used by all respected and experienced scientists in this field.

3. The Minnesota Department of Health provides an excellent description of mold in homes http://www.health.state.mn.us/divs/eh/indoorair/mold/homes.pdf. Mold colonies can start from a single spore, which is microscopic, smaller than a dust particle. If a viable mold spore lands on a "food" source (for "food' some molds like cellulose, such as the paper which covers sheetrock) and also receives moisture (it needn't necessarily be standing water), it will begin to reproduce and start a colony. If the colony grows, it will eventually be visible to the naked eye, perhaps starting as a tiny spot, then growing into a colony which might be measured by inches, or perhaps even by feet. The colony grows spores to continue its reproduction and the growth of the colony. If either food or moisture is taken from the colony, it will eventually die. But the microscopic spores and other structures can still be released into the air by vibrations or air movements. These spores can then be transported throughout a house, contaminating it. Wherever a viable spore lands, there sits a potential site for a new colony waiting grow, should food and moisture be supplied. Thus, mold spores from a single area of "growth" in one corner of a house, can readily contaminate the rest of the house with spores, which may require that the entire home be remediated, rather than just the area where the visible mold colony was found. An example of how easily these microscopic mold spores travel can was recently in the press: a new soybean rust fungus, previously unknown to North America, was found November, 2004 in the state of Louisiana. Scientists believe this contamination came about when this species' spores were transported from South America during the recent hurricane season.

http://story.news.yahoo.com/news?tmpl=story&cid=570&ncid=753&e=1&u=/nm/20041110/sc_nm/food_soyrust_usda_dc

4. The Defendant's assertion that "No testing was done for mycotoxins" in the Garry home is factually incorrect. Several bulk sheetrock materials were taken from the area under the toilet leak in southwest bedroom. A portion of two of these samples was tested. The first sample primarily had *Stachybotrys spp.* growth. The second sample primarily had growth of *Chaetomium spp.* These samples were sent for mycotoxin analysis to P&K Microbiology on June 20, 2003. A report on July 18, 2003 concluded that 10 of 13 *Stachybotrys spp.* associated mycotoxins were found in the first sample. All three of the tested *Chaetomium spp.* mycotoxins were found in the second sample

5. My scientific determination and conclusion that the southwest bedroom was a source of fungal spore distribution in the house was not exclusively based on carpet water staining. It was based on an examination of the water leak history of the space, air sampling, and bulk sampling. This is the standard, generally accepted, and recommended methodology for determining possible areas of fungal growth. *See Biological Risk Engineering Handbook – Infection Control and Decontamination* edited by Martha J. Boss and Dennis W. Day (Lewis Publishers CRC press, NY 2003) at pages 41 and 42. I have attached true and correct copies of the relevant pages to this affidavit. I contributed photo micrographs from my research at the University of Minnesota for this publication (see acknowledgements).

6. Visible fungal growth of *Stachybotrys spp.* and *Chaetomium spp.* was noted on the wood baseboard strips in the southwest bedroom at the location of the plumbing leak. The fungus *Chaetomium spp.* was noted from tease tape samples taken

the wood joist, insulation and sub flooring underneath the toilet in the Garry home. The sub-flooring underneath the toilet was discolored in a manner associated with water damage. *See* true and correct copies of photographs of contaminated sheetrock from the Garry home attached to this Affidavit.

7. Both *Chaetomium spp.* and *Stachybotrys spp.* are cellulose degraders and grow on material with a high cellulose content. *See Biological Risk Engineering Handbook, supra,* at page 21 and 32). These organisms are prevalent in homes with water damage and infrequently noted in homes without water damage. *See* http://aem.asm.org/cgi/reprint/70/11/6394 at page 6399.

8. Passive and aggressive samples were taken on the carpets in the SW bedroom and the NW bedroom in the Garry home. This is standard protocol, and a generally accepted methodology to determine if mold in a carpet is a source for fungal distribution. *See Bioaerosols Handbook* at page 515. The initial air sample for these organisms was lower before the carpet was disturbed and elevated after the carpet was disturbed. This indicates that the spores were in the carpet. Carpet is often a place of fungal spore deposition. *See Biological Risk Engineering Handbook, supra,* at page 181.

9. My conclusions regarding the spore distribution throughout the house and how the spores distribute were distributed is based on the history of events, the aerodynamic properties of the spores and sampling. I employed the standard protocols and generally accepted methodology for obtaining a history and determining likely fungal amplification sources were used. *See Biological Risk Engineering Handbook, supra,* at page 41- 42, 51 and *Bioaerosols Handbook*, edited by Christopher S. Cox and

Christopher M. Mathes (CRC Lewis Publishers, NY 1995) at 585. A true and correct copy of the relevant pages from these publications is attached to this Affidavit.

10. The initial event was water leaking from the toilet onto the back of the ceiling sheetrock and along the walls approx 2.5 feet on either side of the in the SW corner of the room under the leaking toilet. Spore distribution from mold caused by the plumbing leak through the air at that time, while somewhat limited, would definitely have occurred. Some spore distribution through the air was also likely in areas that were dry or disturbed by vibration (i.e. walking on the floor above the SW bedroom) or changes in airflow in the house (doors opening and closing, air handling unit turning on and off). Microbial VOC's produced by the organisms while growing do not require them to be disturbed. *See Bioaerosols Handbook* at page 585.

11. When the portion of the ceiling fell down in 1999, it was described by Mrs. Garry as being maybe a little larger than the size of a plate but irregularly shaped. When the cavity was opened, the dispersal of spores from the mold caused by the plumbing leak throughout the home was much more efficient and substantial. The cutting out and repairing of the ceiling provided more mechanical energy to spore dispersal. After these events, the carpet in room would have had spores from the mold caused by the plumbing leak that would have been moved around the house by foot traffic and also by airflow throughout the house.

12. In addition, during the sheetrock wall inspection in 2002, the wall was cut to examine for fungal growth. The mechanical energy provided by cutting the wall also aided in air spore distribution and deposition on surfaces from the mold caused by the plumbing leak. The sheetrock removal was done under uncontrolled abatement. This

was foreseeable, but unfortunate. More mechanical energy was provided for spore dispersal of the mold produced by the leaking toilet through the air at that time. Samples of the sheetrock indicate that the rock was cut on one side and ripped away from wall corner. The carpet in room had further spore contamination. Material was transferred from SW bedroom to NW bedroom during removal aiding transfer of spores to adjacent room. This spore dispersal occurred via the air and foot traffic from spores in the carpet.

13. This residence has a well documented history of water intrusion events. However, it must be stressed that even if the sewage backups, possible leaks from cracks in the foundation the ceiling light fixture leaks, the leaks around the windows and the water leak from the icemaker or any other water intrusion events had *never occurred*, this house still would have a problem with the injurious *Chaetomium spp.* and *Stachybotrys spp.* mycotoxin containing mold spores that resulted from the toilet leak, the house would have been uninhabitable, and the property damage to the Garrys' home would still have occurred. Because these spores were distributed throughout the house, the house and property would need to have appropriate fungal abatement and cleaning, and if the house and other property could not be sufficiently remediated to protect the Garrys' health, a total loss to the property would still have occurred as a result of the plumbing leak.

14. As I explained during my deposition, my use of the terms "Primary and Secondary Source" were simply employed as for convenience in the analysis of this case. "Primary" in this case is defined as an area of growth extensive enough to require a controlled abatement according to EPA and NY City Health Department Guidelines on Assessment and Remediation of Fungi in Indoor Environments. As support for this use of this terminology, please see the following resources:

http://www.ci.nyc.ny.us/html/doh/html/epi/moldrpt1.html

http://www.ci.nyc.ny.us/html/doh/html/epi/moldrpt1.html#remed

EPA guidelines

http://www.epa.gov/iaq/molds/moldcleanup.html

http://www.epa.gov/iaq/molds/table2.html

Texas Department of Health summary of several guidelines

http://www.tdh.state.tx.us/beh/IAQ/Mold_Rem3.htm

15. The total area affected by mold growth from the toilet leak in the SW bedroom is less than 10 square feet of ceiling material including the sub floor and rim joist and greater than 40 square feet of wall sheetrock. Based on sheetrock preserved at GeoTek, fungal growth occurred in a total of at least four locations on the sheetrock in the south and west walls and on the baseboard. With the total area affected by fungal growth on the material a level 3 or level 4 containment (EPA and NY guidelines) would be recommended for removal. (Primary source). Mr. Berg's deposition testimony at pages 26 - 28 is helpful in identifying how the samples were collected, but is somewhat incomplete with respect to the amount of mold present. He mentions only two sections with mold growth and GeoTek has at least 4 from the area.

16. However, the other areas in the house that have currently been sampled and known to have *Stachybotrys spp.* and *Chaetomium spp.* fungal growth on the surface are less than 2 square feet total. The recommended abatement procedure for this size of material would be a level #1 containment – less than 10 square feet. (EPA and NY guidelines) (secondary source)

17. My conclusion that 90 percent of the *Stachybotrys spp.* and *Chaetomium*

*spp.* originated from the plumbing leak over the southwest bedroom is based on the total surface area known to require mold abatement. The total area of mold abatement for known *Stachybotrys spp.* and *Chaetomium spp.* fungal growth in the SW bedroom exceeds 40 square feet. The known area of *Stachybotrys spp.* and *Chaetomium spp.* fungal growth in the rest of the house is less than 2 square feet.

18. I have also relied upon the New York City Department of Health, **"Guidelines on Assessment and Remediation of Fungi in Indoor Environments."** Bureau of Environmental & Occupational Disease Epidemiology, November 2000. www.ci.nyc.ny.us/html/doh/html/epi/moldrpt1.html. This 17-page guide is an update of original guidelines from 1993 that dealt with mold growth problems in several New York City buildings. It revises and expands those guidelines to include all types of mold, and provides a discussion of health issues, evaluation strategies and clean-up and control methods. It was developed by specialists in the fields of microbiology and health sciences, and has been widely cited on mold remediation projects across North America. See http://www.codetalk.fed.us/Mold_and_Mildew_Information_Resources.htm.

19. Further your affiant sayeth not.

Dated this 7 day of December, 2004.

Neil Carlson

Subscribed and sworn to before
me this 7 day of December, 2004.

Notary Public – State of Minnesota
My Commission Expires: 1/31/05 (SEAL)

CAROL A. UCHAL
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2005

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **Affidavit of Neil Carlson in Opposition to Defendant's Motion to Exclude Testimony of Neil Carlson** was served via first class mail, postage prepaid, upon the following:

John Stadler
NIXON PEABODY, LLP
100 Summer Street
Boston, MA 02110

and served electronically upon the following:

Cheryle Wiedmeier Gering
Mitchell Peterson
DAVENPORT, EVANS, HURWITZ & SMITH
P.O. Box 1030
Sioux Falls, SD 57101-1030

on this 9th day of December, 2004.

/S/ SHANNON FALON